The clerk, call the next case, please. 313-0401, consolidated to 315-0402, people of the state of Illinois, faculty by the name of Justin Jingleosi, v. William McClendon, and family by the name of Thomas Corrales. Mr. Corrales, afternoon. Happy Friday afternoon. Yes, afternoon. Thankfully, may it please the court, I'm Tom Corrales from the State Health Defender's Office. I represent Mr. McClendon in this appeal. There's only one issue being raised in this consolidated appeal, so I won't keep your Friday afternoon too long here. It relates to the guilty pleas that the defendant entered in his Knox County cases in February of 2013. In the misdemeanor case, the defendant pled guilty to domestic violence, and in the felony case, he pled guilty to one count of mob action, which is a Class IV felony. This is an appeal from the circuit court's denial of the defendant's motions to withdraw his pleas of guilty. And the question presented in this appeal comes down to how firmly a defendant has to be held to his agreement at a guilty plea hearing with the state's recitation of what the evidence would show at a trial when it reads the factual basis. When the defendant has the pressure of not having any hope of getting out of jail in the near future, short of having to agree with what the state factual basis would be, that's not really a voluntary guilty plea. And the reason the defendant in this case faced that choice was his then-appointed attorney told him that he would have to sit in the county jail for a long time if he decided that he wanted to truly exercise his right to present his own witnesses at trial. Now, on appeal, the state is resisting the defendant's attempt to reacquire his right to trial based on the decision of the Fifth District in People v. Feldman. And that case relied principally on the notion that a party should be held to his or her judicial admission, regardless of the setting here where the pressures contributed to the party making those admissions or that admission. In the circuit court, it's worth noting that the state was not opposed to letting the defendant take back his guilty plea and go to trial with a newly retained attorney. Now, why would the prosecutor in the circuit court have had no objection to allowing the defendant to vacate the guilty plea and proceed to trial? Could it be the prosecutor realized the difficult choice that former counsel had put that defendant in when he was protesting his innocence? And by the way, the record shows that the defendant testified that the conversation was short and it was out in the open in the courtroom when his attorney, in a three-minute consultation, prevailed upon him to go along with the negotiated guilty plea. Now, to trumpet the interest of finality in a case like this would be to promote extracted guilty pleas out of defendants who are innocent and then to hold them to it. And the problem with that approach is that there is a binding precedent still which prefers that a defendant not be held to such an admission. Does it matter whether they're innocent for your argument? The fact that he has a defense is an important part of the formula. Aren't guilty as well entitled to the state's requirement of guilty behind reasonable doubt? Yes, that's certainly true. All right. I think it adds something to it that he had witnesses that were ready to come into court. Well, that's not the argument that an innocent person is being railroaded. So can a guilty person under the Constitution be railroaded in this scenario? In terms of having false evidence put against them? No. Well, that's what I mean. Being coerced to give up the right to put the state to the test, the government to the test under the law, under the Constitution. So we're looking at the pressures that have brought the bear on either the guilty party or... Yeah, but you were saying the innocent, the innocent. I just said the guilty in your scenario had the same right. Well, I think there's more of an injustice when... It's not as rhetorically convincing, but it's a factual statement. It is. It is a factual truth. Now, there's an aspect of this case that I think is common ground between myself and the state. It's troubling that the trial judge can conduct a fully compliant guilty plea proceeding in compliance with Supreme Court Rule 402 in spite of a defendant who has a claim of innocence and has witnesses and then see that being undone by a timely motion to withdraw the guilty plea. The state takes the position, which the court that decided the Feldman case took, that a defendant can't stay silent about the real reason that he's there accepting the factual basis and a finding of guilt and then after he gets his freedom, come back and go back on that decision. But part of the problem here stems from the immediacy of many defendants, the fact that bonds are often set too high for them to be able to afford and that in this case, for example, there's a $100,000 bond set for both cases, the most serious of which was a mob action case for a struggle that resulted in... How much would they have to pose? It was 10%, so it would have been $10,000. And an indigent person might be able to mount the defense when he's back on the job, but in custody he faces pressure to go along with what his attorney says will let him get out and go home. If the judge were to ask, for example, now do you have any witnesses that would be able to contradict what the factual basis was, the defendant would be put in a very hard choice in this scenario because if he says I do and they're back there in the court but my lawyer won't talk to him, he's going to end up back in the county jail. There's no doubt about that. The judge will not say, well, they're going to let you go under the cognizance bond because of that. So he has to make a tough decision at that point to follow the advice of his attorney, which is it'll go better for you if you just say everything's the way you say it is and you'll go home. But since the judge can't read the defendant's mind, this can become a waste of already taxed judicial resources, and I acknowledge that. But there are two responses to why I don't think it's appropriate to hold my client to his silence on the day he pled guilty. The first answer is that the prosecutor in Knox County was willing to let the short period of time that the guilty plea took, and that consumes 28 pages of the transcript. When the guilty plea was taken, the state was willing to let that go by the wayside in the trial court. Do you think that was a serious offer? Do you think they were really serious about saying, let's just let him withdraw his guilty plea? I do. Or do you think they were, let him withdraw the guilty plea and we'll hit him harder next time? Do you really think they were serious about it? I believe that they were troubled by the circumstances under which the guilty plea was taken. It wasn't that long after the guilty plea that Sherry Lawson Weaver, the new attorney, presented affidavits along with the guilty plea, I mean the motion to withdraw the guilty plea. And I think that gave the state some concern that this was someone that could have gone to trial if he had had the other attorney at the beginning. And the second answer to why we would allow for the court to be frustrated by a defendant who comes back and asks to withdraw a guilty plea shortly after he remains silent is that this is a totally different type of admission to what the court in Feldman was comparing. Most of the cases relied on by the Fifth District in Feldman were civil cases. Part of the civil lawsuits are not sitting in a county jail unable to post 10% of a $100,000 bond. And presumably they don't have lawyers telling them just lay down on your case either because the lawyer is busy. Those are the types of admissions that are more like ones that sometimes courts find involuntary when they're made in the context of police interrogations because they're coerced and putting pressure on the person. So I think it would be a better comparison than to the civil cases that the Feldman court relied on to look to the situation when an offered guilty plea is presented, which is more common in the federal system, but we do see them here once in a while too, where the defendant will accept a finding of his guilt but refuses to express any agreement with what the factual basis says. If that type of a defendant, within 30 days of the entry of the guilty plea, should come up with the witnesses who he didn't have access to at the time of the guilty plea, something happens in the interim period before the time for filing the post-guilty plea motion runs out, why should they not be able to mount the defense that they now can mount when they stayed silent as to whether they agreed with the state's recitation of a factual basis? The interest in finality should not trump the preference for a trial on the merits in such a setting. And the same thing is true here where the defendant is simply unable to fight the charges in his case with a prepared attorney while he was sitting in the county jail, not able to post the 10% of his bond. I would compare it to an offered plea. The defendant was silently acquiescing instead of refusing to acknowledge the factual basis. It's analogous is what I'm arguing. And again, to insist on adhering to the interest of finality is more, it's giving a green light to a heavy-handed system that pressures guilty pleas out of people, innocent people as well as guilty people. And that's why I think the prosecutor here was willing to let this case go to a trial on the merits. It may have been that the prosecutor was willing to put those witnesses to the test, but the prosecutor read the affidavits that were part of the motion to withdraw the guilty plea, and they preferred that this be aired out in a trial. So I don't know why we would want to just close the door on that now. I think achieving a just result is the ultimate goal of our system, and we would ask that you would reverse the trial judge's denial of the motion to withdraw the defendant's guilty plea. Thank you. Thank you, Mr. Corrales. Mr. Nicolosi? Good afternoon. Good afternoon, Your Honors. Please support Mr. Corrales. The people would submit that the trial judge didn't abuse his discretion in this case, regardless of whether the state below acquiesced to the defendant's motion to withdraw his plea. That's not relevant here. What's relevant is that the trial judge believed that this plea should not have been withdrawn,  and the people request that this Court affirm his decision on this case, and the people would submit that there is a lot of support for his decision. As I cited quite extensively in my brief, the Feldman case, I would argue, has an almost identical procedural posture to this case and really should be followed. In Feldman, did the prosecutor agree that the motion to withdraw should be allowed? I'm sorry, I haven't read the case recently. I haven't. I don't remember that specific part. But again, Your Honor, going back to what I said originally, I don't think that should matter. I think the trial judge felt that this plea should not be withdrawn. The trial judge in Feldman felt that the plea should not be withdrawn. And I'm arguing not for what the prosecutor did below, but I'm arguing that the trial judge's decision was correct. I think that's all that should matter here. It's whether or not he abused his discretion in withdrawing this plea. Can I ask you a philosophical question? I can't promise an accurate answer or a good answer. When I was in the trial court, I had a little note on the bench to remind me this is not my case. It's not the judge's case. It's the State's case. So why couldn't the prosecutor just agree to allow the defendant to withdraw his guilty plea? And why is it the judge's role? Do you think the case law supports the judge's decision to override the prosecutor? I don't know if there is case law to that respect, but I think what you stated to Mr. Corrales earlier that maybe the prosecutor did want it to withdraw because they had some intentions of going forward with all the counts and things like that. So this could be a case of be careful what you wish for. You're here representing the State's Attorney's Office. Sure. And so their position now is that the trial judge's decision was correct. I think that's all I can do here is just argue for the trial judge's decision. If you're asking what my opinion is, I'm not sure that's entirely relevant. If you'd like to hear, I can. No, no, no. Okay. But you're here representing the State's Attorney. Yes. And if the State's Attorney, Mr. Corrales, says there is some common ground between the two of you, which I think we're reasonable people, I just want to know does the State's Attorney still think that he should have been allowed to withdraw the plea? I don't know the answer. I believe that the reason I'm arguing on behalf of the trial judge and that his plea shouldn't be withdrawn is because I think the sanctity of the words in open court should be supported. I don't think you should be able to acquiesce to everything. I understand what my trial rights are. I'm waiving them. I understand. I was happy with my defense counsel, beloved. I told him, specifically we're talking about the defenses. The trial judge asked him, did you explain with your counsel what your defenses you might have? Yes. Yes, sir. Yes, Your Honor. Were you threatened? Were you coerced? Were you promised anything? Were you forced? He said no. I feel like the words in the transcript below should stand for something, if anything. And, again, I think it's a dangerous precedent if he's just allowed to come up with these affidavits later, which he clearly could have obtained. He knew of this information, again, assuming these affidavits are true, although one of them, of course, is completely irrelevant to this case as I discuss in my brief and I'm not going to get into here. But, again, I think when you have, as Mr. Kralis acknowledged, that this is a perfectly executed guilty plea by the trial judge's perspective, ensuring that it was voluntary and that he was represented in a way that he was happy with, according to the transcript. And I believe to throw that out based on saying, oh, I didn't want to sit in court, that seems like it can open the door to a lot of defendants. Sit in jail. I'm sorry. He probably would have. The court's probably better. He would have. I think that opens the door to any defendant saying, well, I wanted to get out for this reason and this reason. That's just a defendant making a choice. He had a choice. He could wait in jail a little bit longer and gotten these affidavits or arrange for these witnesses to testify, or he could have pled guilty and he pled guilty and the people just would submit that this decision should be upheld because there is nothing in the transcript of the guilty plea that justifies withdrawing the decision. And one last time, just points of Feldman. It discusses the judicial admissions that defendants make at guilty pleas. And I think a very convincing argument that that court makes that decisions such as this should be affirmed. And that's all I have. If there are any other questions, I'd be happy to answer them. Thank you. Mr. Corrales, any rebuttal? I'll go back to the common ground. I understand that this guilty plea hearing was somewhat spoiled by the circumstances under which it was conducted. But every answer that the defendant was giving to the court was given under the same pressure. That pressure influenced the answers. And it was only after the plea was accepted that the nature of the pressure was revealed. So in some sense, there's not much you could do about it, short of a judge who's the perfect polygraph reader of eyes. And then what would you do? You're lying. You're not happy with your attorney. It was a pressurized situation that the defendant gave his answers in. And as to the concern or worries that this would create a mass of defendants who would come up with anything under the sun to try and show that they really weren't voluntarily pleading guilty, I would assume that in those situations the state would not be agreeing to everyone allowing to withdraw their guilty plea. I think there's a reason that in some cases the state's willing to let justice be determined in a trial. And in those cases where the defendant comes up with a lame reason, the state's not going to agree to it. So I think this is a case where the state realized this was truly a pressured situation and we should go to trial. Do you have anything about the defendant personally? As far as? As education, experience with the court? Well, from his affidavit, I think he indicated that he was of limited understanding of the words used legally, used in court. The trial judge wasn't convinced by that because he felt he had the discourse and thought he understood, but the defendant didn't give his education level, but he swore to an affidavit that he was a little bit overwhelmed by communications during the guilty plea. I don't have any inside information. He was not. Was there a pre-sentence investigation? There was not. This was a fully agreed disposition. But the judge kind of participated in the decision, too. Wasn't there a negotiated sentence and the judge kind of said, I want $100 of public service work, too, and then they were forced to? There was. There was kind of a bargaining going on in the midst of the guilty plea hearing and the defendant had to make a rapid decision on whether he would still accept terms with the additional community service. The same judge took the plea that her motion was drawn. Yes. Okay. Thank you. Questions? Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in brief recess for a panel change.